IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** § § § | |
| *Plaintiff*, § § | |
| v. § | No. MO:20-CV-00091-DC |
| § | |
| **AZTECA TANK MANUFACTURING, INC.,** formerly doing business as **AZTECA FABRICATION INC.; CAZA PETROLEUM MANAGEMENT, LLC,** and **CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. B0702CM303220K,** as subrogees of **LIBERTY OILFIELD SERVICES, INC.** § § § § § § § § § § § § | |
| *Defendants*. § | |

## ORDER

BEFORE THE COURT is Defendant Azteca Tank Manufacturing, Inc.'s ("Azteca") Opposed Motion for Summary Judgment (Doc. 26), Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") Response to Azteca's Motion for Summary Judgment (Doc. 30), and Defendant Azteca's Reply in Further Support of Its Opposed Motion for Summary Judgment (Doc. 34); and Plaintiff State Farm's Motion for Full and Final Summary Judgment (Doc. 27), Defendants Caza Operating, LLC and Caza Petroleum Management, LLC's (collectively, "Caza") Response to Plaintiff State Farm's Motion for Summary Judgment (Doc. 29), Defendant Azteca Tank Manufacturing, Inc.'s Opposition to Plaintiff State Farm's Motion for Full and Final Summary Judgment (Doc. 31), and Plaintiff State Farm's Reply to Azteca's Opposition to State Farm's Full and Final Motion for Summary Judgment (Doc. 32).

1

After due consideration, the Court **GRANTS** Azteca's Opposed Motion for Summary Judgment (Doc. 26) and **DENIES** State Farm's Motion for Full and Final Summary Judgment (Doc. 27).

### I.  BACKGROUND

This case arises from a dispute regarding State Farm's duty to defend and duty to indemnify Azteca in an underlying wrongful death action. On September 1, 2017, a tank battery located in Eddy County, New Mexico exploded (the "Incident") resulting in the deaths of Ronald Berkheimer, James Hernandez, and Edgar Garcia (the "Decedents"). (Doc. 26-1 at 3). Personal representatives and family members of the Decedents filed suit against Caza in the Fourth Judicial District Court, Miguel County, New Mexico, Cause No. D-412-CV-2018-55 (the "Lawsuit").

Caza filed a third-party complaint against Azteca in the Lawsuit for indemnity and contribution for the Decedents' wrongful death claims as well as property damage related to the alleged negligence of Decedents as Azteca employees. (Doc. 27-4). Caza claims that the following expenses were incurred due to the Incident: (1) the cost to repair/replace equipment including labor costs; (2) the cost of equipment and other items at the site that could not be used; and (3) the cost to facilitate inspections and investigations. (Doc. 26-1 at 6). Caza further alleges the Incident required a forced shut down on site and delay of operations of three months resulting in material loss of use of the site and significant loss of business. (*Id*.). Caza seeks recovery from Azteca for these alleged damages. (*Id*. at 8–9).

In Caza's Second Amended Third-Party Complaint against Azteca, Caza alleges Decedents died as the result of an explosion of one tank within a tank battery, all of which were manufactured, fabricated, supplied, and sold to Caza by Azteca. (Doc. 27-4 at ¶¶ 4, 8, 10). Caza

2

alleges Azteca's employees (Decedents) were dispatched to the site after Azteca was notified that the subject tank had pin hole leaks at its load line collar, was defective, and was still under Azteca's warranty. (*Id*. at ¶ 11). Caza further alleges Azteca's employees attempted to weld or perform other hot work on the defective load line collar despite knowing that the subject tank was combustible. (*Id*. at ¶¶ 13, 15). Caza claims that these actions, along with the defective product, were the causes of the explosion and the resulting damages. (*Id*. at ¶ 19).

Caza alleges to have incurred significant costs to repair and replace damaged equipment, as well as damages for loss of use and lost business. (*Id*. at ¶¶ 28, 31). While Caza enumerates seven causes of action against Azteca, they can be categorized as claims for (1) negligence, and (2) product liability/breach of warranty. (*Id*. at ¶¶ 32–61). In addition to its own property damage claim, Caza seeks indemnity and contribution from Azteca for the wrongful death claims of Azteca's three employees. (*Id*.). In its answer to Caza's third-party complaint, Azteca admitted that the three individuals who died in the explosion were employees of Azteca. (Doc. 27-5).

On April 26, 2019, Certain Underwriters at Lloyd's, London ("Underwriters") subscribing Policy No. B0702CM303220K filed a Complaint in Intervention against Azteca in the Lawsuit. (Doc. 26-2). Underwriters allege that damages were paid to their insured's property located at the site because of the Incident. (*Id*. at 4). Underwriters seek recovery in subrogation from Azteca for the alleged damage to their insured's property including piping and vehicles near the site of the explosion. (*Id*. at 5).

In Underwriters' Original Complaint in Intervention, Underwriters alleges that Azteca sold one or more tank batteries to Caza which were placed at Caza's oil well in New Mexico. (Doc. 27-5 at ¶¶ 9, 10). Thereafter, Caza found one of the tanks contained pinhole leaks in its

load line collar. (*Id*. at ¶ 11). Caza called Azteca to repair the tank and "Azteca welders" were dispatched to repair it. (*Id*. at ¶ 12). The Azteca welders saw that the tank contained combustible residue and informed Caza that the tank was not cleaned or safe for hot work, including welding. (*Id*. at ¶¶ 13, 14). The Azteca welders dragged a welding cable from their welding truck to the tank and started a new weld on the tank along the load line collar. (*Id*. at ¶ 16).

As the Azteca welders began welding, the tank exploded, killing the Azteca welders and damaging the surrounding property. (*Id*. at ¶ 17). Certain property owned by Liberty Oilfield Services ("Liberty") sustained damage which Underwriters insured. (*Id*. at ¶¶ 18, 19, 21). Underwriters paid Liberty for its damaged property and received an assignment to subrogate against any liable parties. (*Id*. at ¶¶ 21, 22). Underwriters assert a negligence claim against Azteca to recoup such payments made to Liberty. (*Id*. at ¶¶ 25–31). Underwriters' specific allegations of negligence against Azteca are: (1) failure to verify the tank was free of combustible residue before welding; (2) failure to direct others with necessary tools and experience to clean the tank before beginning welding; (3) beginning welding when the tank was clearly not ready for hot work; and (4) failure to weld with prudence and care. See id. at ¶ 27.

State Farm issued Business Car Policy, Policy No. 342-7142-B01-43B-008 to Azteca, with a policy period from August 1, 2017, to August 1, 2018 (the "Policy"). (Doc. 1 at 7; Doc. 26-3; Doc. 27-7). Paragraph 1 of the "Insuring Agreement" to the Policy provides:

**Insuring Agreement**

1. ***We*** will pay damages an ***insured*** becomes legally liable to pay because of:

    a. ***bodily injury*** to others; and

    b. damage to property, including the loss of use of such property caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

(Doc. 26-3 at 36; Doc. 27-7 at 31).

**Exclusions**

THERE IS NO COVERAGE FOR AN INSURED:

\*\*\*

4. FOR **BODILY INJURY** TO THAT **INSURED'S EMPLOYEE** WHICH ARISES OUT OF THAT **EMPLOYEE'S** EMPLOYMENT. This exclusion does not apply to that *insured's* household *employee* who is neither covered, nor required to be covered, under workers' compensation insurance;

\*\*\*

5. FOR DAMAGES ARISING OUT OF THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE[.]

(Doc. 27-7 at 33–34).

11. FOR DAMAGES ARISING OUT OF THE;

    a. HANDLING OR USE OF, OR

    b. EXISTENCE OF ANY CONDITION IN OR WARRANTY OF ANY PRODUCT MANUFACTURED, SOLD, OR DISTRIBUTED BY AN **INSURED** IF THE **BODILY INJURY** OR DAMAGE TO PROPERTY OCCURS AFTER THE **INSURED** RELINQUISHES POSSESSION OF THE PRODUCT.

(*Id*. at 35).

On June 26, 2018, Azteca demanded coverage under the Policy in connection with the third-party complaints filed by Caza and Underwriters against Azteca. (Doc. 26-4). On November 19, 2018, State Farm accepted the tender. (Doc. 26-5). On April 10, 2020, State Farm filed a Declaratory Judgment action against Aztec, Caza, and Underwriters, seeking a

declaration pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, that the Policy purchased by Defendant Azteca does not cover an industrial tank explosion, and that State Farm does not owe a duty to defend or indemnify Azteca in connection with the third-party complaints and the underlying tort lawsuit pending in New Mexico state court.  (Doc. 1).

Caza filed its Answer on June 12, 2020 (Doc. 8), and Azteca filed its Answer on August 25, 2020 (Doc. 18).  By stipulation, Underwriters agreed to not participate in this litigation and consented to be bound by the Court's rulings.  (Doc. 11).  On December 3, 2021, Azteca and State Farm each filed cross-motions for summary judgment.  (Docs. 26, 27).  On December 30, 2021, the parties filed their Responses to the cross-motions for summary judgment.  (Docs. 29, 30, 31).  On January 7, 2021, Azteca and State Farm filed their respective Reply briefs.  (Docs. 32, 34).

## II.   LEGAL STANDARD

### A.   Legal Standard for Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the Court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, they "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor."  *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986).  When the nonmovant

bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in their favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, a nonmovant does not satisfy her burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999).

**B.    Legal Standard for an Insurer's Duty of Defend**

When determining whether an insurer has a duty to defend under Texas law, courts should follow the "eight-corners rule." *Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 491 (Tex. 2008). "The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). "Resort to evidence outside the four corners of these two documents is generally prohibited." *Id*.

"The duty to defend does not depend upon the truth or falsity of the allegations." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co*., 538 F.3d 365, 368 (5th Cir. 2008). An

insurer's duty to defend is usually invoked with a plaintiff's factual allegations that potentially support a covered claim. *Id.* Courts are to construe allegations in the pleadings liberally and resolve all doubts in favor of the insured. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Gore Design Completions, Ltd.*, 538 F.3d at 369 ("When in doubt, defend.").

The insured has the burden to establish coverage under the policy. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.,* 460 S.W.3d 597, 603 (Tex. 2015). But if the insured establishes coverage, then to avoid liability, the insurer has the burden to prove that the loss falls within an exclusion under the policy. *Id.* "[W]hen the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend." *Gore Design Completions, Ltd.,* 538 F.3d at 370 (internal quotations and citations omitted). But the burden of proving that the exclusion applies rests with the insurance company. Tex. Ins. Code Ann. § 554.002.

## C.   Legal Standard for an Insurer's Duty to Indemnify

The duty to indemnify is based on the actual facts developed in the underlying suit, rather than the factual allegations in the pleadings. *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex. 1997). While "the duty to indemnify is generally not ascertainable until after the insured has been held liable, it is justiciable prior to a finding of liability when the same reasons negating the duty to defend also negate any duty to indemnify." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.,* 468 F.3d 857, 858–59 (5th Cir. 2006).

## III.   DISCUSSION

For the following reasons, the Court holds that State Farm has failed to meet its burden to establish that the incident falls within the Policy's exclusions, and the Court determines that the

issue of State Farm's duty to indemnify is not ripe. "Whether an insurer has a duty to defend its insured is a question of law." *Lyda Swinerton Builders Inc. v. Okla. Surety Co.*, 903 F.3d 435, 445 (5th Cir. 2018). Texas courts apply the eight-corners doctrine to answer that question. A court must compare allegations within the four corners of the plaintiff's pleadings in the underlying action with provisions within the four corners of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). When doing so, "allegations in the petition must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend." *Lyda Swinerton Builders,* 903 F.3d at 446. "If the petition pleads facts sufficient to create the potential of covered liability, then the insurer has a duty to defend the entire case, even if some of the alleged injuries are not covered." *Id*. at 447 (emphasis in original). But if the petition only alleges facts excluded by the policy, then the insurer has no duty to defend. *Northfield Ins. Co. v. Loving Home Care Inc*., 363 F.3d 523, 528 (5th Cir. 2004).

Azteca contends that the eight-corners doctrine prevents consideration of extrinsic evidence. The United States Court of Appeals for the Fifth Circuit has held that the eight-corners doctrine does not apply in the "very limited circumstances . . . when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins.,* 363 F.3d at 531. The Texas Supreme Court has not expressly adopted this exception and the Fifth Circuit recently certified the question to the Texas Supreme Court, but a ruling has not yet issued. *Bitco Gen. Ins. Corp. v. Monroe Guaranty Ins. Co.*, 846 F. App'x 248, 252 (5th Cir. 2021) ("Is the

9

exception to the eight-corners rule articulated in [*Northfield Insurance*] permissible under Texas law?").

The Court does not find discrete supplementation necessary in this case. The Policy at issue without question applies to damage to property, including the loss of use of such property caused by an accident that involves a vehicle. The operative underlying pleadings refer to the subject vehicle, the damage at issue, and the accident in question. Further, the issues involving the causation of the Incident are questions that do not go solely to a fundamental issue of coverage and overlap with the merits of or engage the truth or falsity of facts alleged in the underlying case. Because it is not initially impossible to discern whether coverage is potentially implicated based on the eight-corners doctrine, *Northfield Ins.,* 363 F.3d at 531, extrinsic evidence is not permitted.[1]

**A.   Coverage Under the Policy**

Azteca seeks coverage as a third-party defendant in the underlying Lawsuit. State Farm contends that it is entitled to a full and final summary judgment holding it has no duty under the Policy to defend or indemnify Azteca in the underlying tort lawsuit pending in New Mexico state court for the following reasons: (1) none of the claims asserted against Azteca are covered because the Policy only covers damages cause by an accident that involves a vehicle; (2) to the extent a vehicle was involved, none of the claims are covered because the Policy specifically excludes coverage for damages arising out of the operation or use of equipment that is towed by, mounted on, or carried on any vehicle; (3) the death claims are not covered because the Policy expressly excludes coverage for bodily injury to the insured's employee that arises out of the

---

[1] On January 11, 2022, the Court granted State Farm's Motion for Leave to file supplemental evidence in support of its Motion for Full and Final Summary Judgment and extended the period for the parties to file responsive briefs to the supplemental evidence. However, because the Court now finds that extrinsic evidence is not permissible, the additional briefing is moot.

employee's employment; and (4) the defective product claims are not covered because the Policy expressly excludes coverage for damages arising out of a condition or warranty of a product manufactured, sold, or distributed by the insured if the damages occur after the insured relinquishes possession of the product. (Doc. 27 at 2).

Azteca argues that Texas law requires State Farm to continue defending Azteca absent clear application of a policy exclusion based on the eight-corners rule of the underlying pleadings and the Policy's coverage. (Doc. 26 at 4). Azteca seeks a ruling from the Court that State Farm has an ongoing duty to defend Azteca in the Lawsuit and that the issue of the duty to indemnify is nonjusticiable. (*Id.*).

### 1. The Incident Involves a Vehicle

First, the Court decides whether Azteca is covered under the Policy as an insured. The Policy provides coverage for "damage to property, including the loss of use of such property caused by an accident that involves a vehicle" covered by the Policy. (Doc. 26-3 at 36). Thus, the clear and unambiguous language of the Policy requires that the damages must be caused by an accident that involves a vehicle. Caza and Underwriters allege that Azteca is liable for damage to property (including loss of use) caused by the accident in question. (Doc. 26-1, 26-2). Both Caza and Underwriters allege that the Incident involved a vehicle:

- "Welding leads were also observed leading from an Azteca welding truck to the subject tank" (Doc. 26-1 at 5);

- "[T]he [Decedents] dragged a welding lead cable from their welding truck to the Tank" (Doc. 26-2 at 3).

State Farm alleges that "[Decedents] drove a Ford F-350 that Azteca owned" (Doc. 1 at 4), and "park[ed] the truck near the leaking tank" (*Id.* at 5). The parties to the underlying Lawsuit dispute the cause of the Incident. Caza and Underwriters contend Decedents' welding

caused the Incident. (Doc. 26-1 at 4; Doc. 26-2 at 4). Decedents deny that welding caused the Incident. (Doc. 26-1 at 5). The truck is a potential source of ignition of the subject explosion based on the facts alleged in the third-party complaints and the Court has no way of knowing at this juncture whether the Incident was the result of welding or the truck itself, and therefore, coverage is potentially owed under the Policy. *Federal Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 554 (5th Cir. 2016) (refusing to apply an exclusion to preclude coverage because "[w]e [the Fifth Circuit] have no way of knowing at this juncture" the basis of claims in an underlying pleading).

In *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50 (Tex. 2011), the Texas Supreme Court dealt with automobile insurance that contained the language "resulting from," which led the court to conclude that its analysis from *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999), where the insurance at issue included the terms "arise out of," was nonetheless still applicable. The Texas Supreme Court held in *Lancer* that transmission of disease within a bus did not fall within an automobile policy because transmission of disease can occur anywhere, and the fact that it occurred within the vehicle was incidental. 345 S.W.3d at 58. Here, the connection between the Azteca vehicle and the damage from the explosion is not so tenuous as the vehicle itself could have potentially ignited the explosion.

In the present case, the Policy does not require that "damage to property, including the loss of use of such property" result from or arise out of use of a vehicle. Rather, the Policy only requires that the damage be "caused by an accident that involves a vehicle." Regardless, the Texas Supreme Court has found that, when interpreting automobile insurance coverage, the "insured vehicle must not merely contribute to cause the condition . . . but must itself produce the injury," rather than merely be the site of the injury. *Lancer Ins. Co.*, 345 S.W.3d at 56. *Lancer*'s

holding that the vehicle must have been a "substantial factor" in bringing about the injury is understood properly not as redefining "arising out of" under Texas law, but as illustrating a "sufficient nexus" between an act and injury as applied to automobile insurance. *Id*. at 56–57.

The Court resolves all doubts as to whether the third-party complaints allege facts triggering coverage under the Policy in favor of coverage. *Id*. at 552 ("Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."). Because the Court finds that the Incident involved a vehicle as a preliminary matter and a sufficient nexus exists between the vehicle and the damage, Azteca has satisfied its initial burden of demonstrating that coverage is potentially owed under the Policy based on the allegations in the third-party complaints. Since Azteca is covered as an insured under the Policy, the remaining issue for summary judgment is whether an exclusion negates State Farm's duty to defend and duty to indemnify.

### 2. Exclusions to the Policy

Second, the burden shifts to State Farm to prove that one or more Policy exclusions apply to eliminate the possibility of coverage under the third-party complaints. Tex. Ins. Code Ann. § 554.005. The Court holds that State Farm has failed to establish that an exclusion to the Policy applies to preclude coverage.

#### i. Equipment Exclusion

State Farm argues that the Policy excludes coverage under the following provision relating to equipment on the vehicle:

> 6. FOR DAMAGES ARISING OUT OF THE OPERATION, MAINTENANCE, OR USE OF ANY EQUIPMENT THAT IS TOWED BY, MOUNTED ON, OR CARRIED ON ANY VEHICLE[.]

(Doc. 27-7 at 34). Exclusion 6 disallows coverage for damages arising out of the operation or use of equipment that is towed by, mounted on, or carried on any vehicle.

Use, as defined by Texas courts, means "to put or bring into action or service; to employ for or apply to a given purpose." *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). "Texas courts define use broadly: the phrase arising from use is treated as being a general catchall designed and construed to include all proper uses . . . not falling within other terms of definition." *Lincoln Gen. Ins. Co.,* 468 F.3d at 859 (internal quotations and citations omitted). For liability to arise out of use, a causal connection or relation must exist between the accident and the use. *Lindsey*, 997 S.W.2d at 156.

The Supreme Court of Texas has adopted a set of factors for courts to consider when determining whether an injury arises out of use of a vehicle for purposes of insurance coverage. *Id*. at 157. Because these factors are instructive as to the term "use," the Court applies them to determine whether damages arise out of the use of any equipment that is towed by, mounted on, or carried on any vehicle so as to preclude coverage under Exclusion 6: (1) the accident must have arisen out of the inherent nature of the equipment, (2) the accident must have arisen within the territorial limits of the equipment that is towed by, mounted on, or carried on the vehicle, (3) the equipment must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

To be a producing cause, the use must have been a substantial factor in bringing about the injury, which would not otherwise have occurred. *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 57 (Tex. 2011); *Mid-Century Ins. Co. of Tex.,* 997 S.W.2d at 157 ("the mere fact that an automobile is the situs of the accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use"). If

14

the incident could have occurred anywhere, then the casual connection to "use" is likely too remote to invoke coverage. *Lancer Ins. Co*., 345 S.W.3 at 56–57.

Caza's third-party complaint does not specify whether the welding leads remained mounted on the truck. Underwriters' third-party complaint asserts Azteca employees dragged a welding cable from their welding truck to the tank and started a new weld on the tank immediately prior to the explosion. (Doc. 27-6 ¶¶ 16, 17). Underwriters' third-party complaint does not specify whether the welding cable was dragged from the welding truck to the tank remained mounted on the truck.

Neither Caza nor Underwriters allege "equipment" was "towed by, mounted on, or carried on" the Azteca truck. The reference to "welding leads" alone does not establish that the alleged damages arose out of the operation, maintenance, or use of equipment, as that term is used in Exclusion 6. Again, causation is disputed by the parties as to whether the welding caused the explosion or the truck itself ignited the explosion. The Caza third-party complaint alleges, "Plaintiffs deny that Azteca employees attempted to weld or that an attempted weld by the Azteca employees caused the subject explosion." (Doc. 26-1 at 5). Thus, the pleadings support the conclusion that something other than welding (or welding equipment purportedly mounted or carried on the Azteca truck) may have caused the Incident.

Here, the Court holds that State Farm has failed to establish as a matter of law that the equipment exclusion applies. First, the Court determines that State Farm has failed to show that the incident occurred within the territorial limits of equipment "towed by, mounted on, or carried on any vehicle." While the Court is unable to determine from the pleadings where the explosion occurred in relation to the alleged equipment, the Court does not find that the Incident occurred outside the territorial limits of the equipment, nor does the Court hold that the location of the

explosion is dispositive. Rather, the Court finds that State Farm has failed to show there is no genuine issue of material fact regarding the location of the Incident in relation to the equipment.

While an accident might arise within the territorial limits of a vehicle despite the injury occurring outside of it, *Lindsey*, *Mid-Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, *Lincoln General Ins. Co. v. Aisha's Learning Center,* 997 S.W.2d 153 (Tex. 1999), it does not logically follow that the "damages" in this case were within the territorial limits of the equipment "towed by, mounted on, or carried on any vehicle," to invoke Exclusion 6 and preclude coverage under the Policy. Because State Farm has the burden of proving an exclusion applies, this genuine issue of material fact precludes entry of State Farm's motion for full and final summary judgment.

Second, the Court holds that State Farm did not sufficiently show that the equipment towed by, mounted on, or carried on the Azteca truck was the producing cause of Caza and Underwriters' damages. The factual allegations assert that Decedents passed due to the explosion. The fact that Decedents may have been using welding cables attached to the vehicle at the time of the Incident is insufficient to establish that the equipment was the producing cause. Thus, based on the allegations in the underlying suit, the Court concludes that State Farm did not meet its burden to establish that the equipment was the producing cause of the injury.

Further, assuming "but for" causation applies in the context of "arising out of" language as used in Exclusion 6, instead of producing cause, the Texas Supreme Court has stated that "it see[s] no significant difference between" the phrases "result from" and "arise out of." *Lancer Ins. Co.*, 345 S.W.3d at 55. The Court notes that the Texas Supreme Court has suggested the use of a "but for" causal analysis in certain cases, while requiring "producing cause" in others.

*Lancer*, 345 S.W.3d at 56–57 ("[T]he insured vehicle must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.").

In *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.,* a federal district court distinguished these standards. 856 F. Supp. 2d 891, 898 (N.D. Tex. 2012) (Boyle, J.) (applying "but for causation" for professional liability insurance but noting that auto insurance required a "substantial factor"). In this case, the underlying third-party complaints fail to suggest that equipment "towed by, mounted on, or carried on" the Azteca truck was a "but for" cause of Caza and Underwriters' damages. The fact that Caza and Underwriters' damages *might* have occurred within the territorial range of the welding cables is insufficient to establish that the equipment played a causal role in the Incident.

Because the Court does not consider extrinsic evidence to the third-party complaints under the eight-corners rule, the Court finds State Farm has failed to meet its burden to prove that Exclusion 6 precludes coverage. State Farm has not established as a matter of law that Decedents' deaths and Caza and Underwriters' resulting damages arose out of the operation, maintenance, or use of equipment towed by, mounted on, or carried on the Azteca truck, and the Court rejects this exclusion as a basis to deny State Farm's duty to defend.

### ii. Employee Exclusion

Next, State Farm contends Caza's claims for indemnity and contribution for the wrongful death claims of the three Azteca employees are barred by Exclusion 4 of the Policy:

THERE IS NO COVERAGE FOR AN ***INSURED***:

4. FOR ***BODILY INJURY*** TO THAT ***INSURED'S EMPLOYEE*** WHICH ARISES OUT OF THAT ***EMPLOYEE'S*** EMPLOYMENT.

(Doc. 27-7 at 34). The Policy does not cover injury to an insured's employee arising out of the employee's employment.

Caza's third-party complaint states that Decedents were employees of Azteca, and that Azteca is vicariously liable for the acts of such employees under the doctrine of respondeat superior. (Doc. 27-4 ¶¶ 10, 20, 35, 54). Exclusion 4 only applies to preclude coverage for bodily injury to that insured's employee.[2] State Farm contends that this exclusion applies to preclude coverage because Decedents were Azteca employees. (Doc. 1 at 9).

Assuming Exclusion 4 applies, it would only preclude coverage for bodily injury. Caza and Underwriters seek to recover alleged damage to property in their third-party complaints. (Doc. 26-1 at 8–9; Doc. 26-2 at 5). Because Exclusion 4 does not apply to preclude coverage for the entirety of the third-party complaints, it cannot be a basis for State Farm to deny a duty to defend. *See Federal Ins. Co.,* 837 F.3d at 553 (holding "the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage.").

### iii. Product Liability Exclusion

State Farm also argues the Policy does not cover Caza's product liability or breach of warranty claims under Exclusion 11:

11. FOR DAMAGES ARISING OUT OF THE:

    a. HANDLING OR USE OF, OR

    b. EXISTENCE OF ANY CONDITION IN OR WARRANTY OF ANY PRODUCT MANUFACTURED, SOLD, OR DISTRIBUTED BY AN *INSURED* IF THE *BODILY INJURY* OR DAMAGE TO PROPERTY OCCURS AFTER THE *INSURED* RELINQUISHES POSSESSION OF THE PRODUCT.

---

[2] Exclusion 5 also precludes coverage for bodily injury to a "FELLOW *EMPLOYEE*," and therefore, the same analysis applies for Exclusion 4 and 5. Exclusion 7 references damage arising out of work after it is considered completed. There are no allegations in the third-party complaints that Azteca had abandoned work at the subject site. Caza alleges the "tank battery was not yet in service" on the day of the Incident. (Doc. 26-1 at 3). There is no allegation in the third-party complaints that Azteca's work was finished. To the contrary, the third-party complaints allege Azteca was still working on the site, which is why Decedents were at the location at the time of the Incident. Accordingly, Exclusion 7 is likewise inapplicable to preclude coverage under the Policy and State Farm owes Azteca a duty to defend.

18

(Doc. 27-7 at 35). State Farm claims this exclusion applies because Caza alleges the tank was under warranty and asserts a claim against Azteca for breach of warranty. (Doc. 1 at 10). Underwriters' third-party complaint does not contain a similar claim of breach of warranty.

Caza's Complaint states that "[t]he tank battery at issue was manufactured, fabricated, supplied, and sold by Azteca to Caza, and delivered to the job site by Azteca." (Doc. 27-4 ¶ 4). Caza brings claims against Azteca for breach of warranty and strict products liability. (*Id.* ¶¶ 55–61). Caza brings numerous other claims beyond breach of warranty, including negligence. Again, the cause of the explosion is disputed, and the Court cannot conclude from the pleadings that the Incident arose out of a defective Azteca product.

Exclusion 11 would not preclude coverage for Underwriters' third-party complaint, which makes no allegation of breach of warranty, and would not preclude coverage for the entirety of Caza's third-party complaint. Accordingly, Exclusion 11 does not apply to preclude coverage for all claims against Azteca. Thus, State Farm owes a duty to defend.

### B. The Court Determines that the Duty to Indemnify Is Not Ripe

Because the underlying Lawsuit is still ongoing, the Court determines that the issue of whether State Farm has a duty to indemnify is not ripe for adjudication. *Northfield Ins. Co. v. Loving Home Care,* 363 F.3d 523, 532 n. 5 (5th Cir. 2004). State Farm argues that the Court can determine State Farm's duty to indemnify prior to the conclusion of the underlying lawsuit if the Court rules that State Farm has no duty to defend, and the same reasons negate its duty to indemnify. However, because the Court holds that State Farm did not establish that the auto exclusion applies, the Court concludes that it cannot rule on State Farm's duty to indemnify at this stage of the proceedings.

### IV. CONCLUSION

The Court determines that State Farm has failed to meet its burden to show that any exclusion applies to completely preclude coverage under the Policy. Accordingly, the Court **DENIES** State Farm's Motion for Full and Final Summary Judgment (Doc. 27), and **GRANTS** Azteca's Motion for Summary Judgment (Doc. 26). The Court **STAYS** the issue of State Farm's duty to indemnify pending judgment in the underlying Lawsuit.

It is so **ORDERED**.

SIGNED this 15th day of January, 2022.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE